Nos. 11-56376, 11-56387, 11-56389,
11-56397, 11-56400, 11-56440 and 11-56482

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

Robert Radcliffe; Chester Carter; Maria Falcon;
Clifton C. Seale, III; Arnold Lovell, Jr.,

*Plaintiffs-Appellants*,

Christy Driver; Ivonne Martinez; Kelly J. Porter; Lisa Brisbane; Brenda Melendez;
Ralph Michael Porter; Steven C. Singer; Naomi Sandres; Maria L. Borbon;
Thomas A. Carder; Glenda Schilleci; Walter Ellingwood; Nancy Segarra; Marcia
Green; Jimmy Green; Charles Juntikka, Esquire,

*Objectors-Appellants*,

v.

Experian Information Solutions, Inc.; TransUnion LLC; Equifax Information
Services LLC,

*Defendants-Appellees*.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DAVID O. CARTER
CASE NO. 05-CV-1070 DOC (MLGx) (LEAD CASE)
_____

**DEFENDANT-APPELLEE TRANSUNION LLC'S
PETITION FOR REHEARING EN BANC**

Julia B. Strickland (SBN 83013)
Stephen J. Newman (SBN 181570)
Brian C. Frontino (SBN 222032)
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1600
Los Angeles, CA 90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 556-5959
Email:  lacalendar@stroock.com
Attorneys for Defendant-Appellee
TransUnion LLC

## I.   INTRODUCTION AND RULE 35 STATEMENT

Defendant-Appellee Trans Union LLC respectfully requests en banc rehearing on the grounds that the panel's Order and Amended Opinion dated May 2, 2013 (the "Opinion")[1] is in error, and the proceedings present questions of exceptional importance, including issues on which the Opinion conflicts with authoritative decisions of other United States Courts of Appeals relating to the legal standards for approval of class action settlements.  Moreover, the Opinion conflicts with a prior panel decision of this Court relating to the harmless error doctrine, such that en banc review is necessary to ensure and maintain uniformity of decisional law.

The Opinion held, as a matter of law, that the presence of an incentive award provision in a class action settlement agreement created an irreconcilable conflict of interest between the class representatives and the settlement class, such that the fairness of the settlement to the class could not even be considered.  The consequence of this ruling is to place into jeopardy one of the largest Fair Credit Reporting Act settlements in history, which had gained overwhelming support of the class as a whole, in the form of more than 750,000 cash claims submitted versus fewer than 1,100 objectors and opt-outs.  The approach described in the

---

[1] Attached hereto as Exhibit 1.

Opinion reflects a radical and unprecedented change in how class action settlements are to be evaluated, requiring correction by the en banc Court.

Specifically:

- The Opinion conflicts with decisions of the Third, Fifth and District of Columbia Circuits, which recognize that the overall fairness of a settlement should be considered when evaluating the class representatives' adequacy under Federal Rule of Civil Procedure 23(a)(4). In these Circuits, an adequacy challenge may and should be rejected when necessary to preserve an otherwise fair settlement that is popular with the class as a whole. "[A]dequacy of representation and adequacy of the settlement are different sides of the same question." Ayers v. Thompson, 358 F.3d 356, 375 (5th Cir. 2004); see also Cobell v. Salazar, 679 F.3d 909, 920 (D.C. Cir. 2012) (intra-class conflict that had no impact on settlement outcome did not defeat adequacy of class representatives), cert. denied, 133 S. Ct. 543 (2012); Sullivan v. DB Investments, Inc., 667 F.3d 273, 327-28 (3d Cir. 2011) (en banc) (nature of alleged intra-class conflict not serious enough to undermine adequacy, given the overall fairness of the settlement), cert denied, 132 S. Ct. 1876 (2012).

LA 51650057

- The Opinion conflicts with the decision of another panel of this Circuit recognizing that even a "troubling" ethical violation does not mandate automatic rejection of the underlying decision; rather, "we are required to evaluate whether there was prejudice." Ludwig v. Astrue, 681 F.3d 1047, 1051, 1053 (9th Cir. 2012).  Defendants-Appellees expressly argued the significance of Ludwig to the panel in in a section of their brief bearing the heading, "Any Errors Were Harmless and Provide No Basis to Overturn the Settlement Approval Order."  (Defs.'-Appellees Br. at 55-56 [Dkt. No. 59].)  The Opinion fails to address Ludwig and does not attempt to assess whether allowing four incentive awards, of $3,000 each, actually prejudiced the many consumers that overwhelmingly supported the $45,000,000 settlement at issue here.

- The Opinion calls into question whether incentive awards ever may be included in any class action settlement agreement, and if so, under what circumstances.  This question is of great importance to bench and bar, as such provisions are routine in class action settlement agreements.  See Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009) (approving $10,000 incentive award where individual class members received $300); In re Mego Fin. Corp. Sec. Litig., 213 F.3d

- 3 -

454, 463 (9th Cir. 2000) (approving $5,000 incentive award when average individual class member received $319). Unless the en banc Court provides guidance in this area, practitioners will not know whether and what incentive award provisions do or do not threaten otherwise fair settlements.

This case presents questions of great importance to District Courts and attorneys who must each day make hard decisions about complex class action settlements. Unfortunately, the Opinion complicates longstanding practice in this area generally, and in this specific case wrongfully risks an exceptionally good settlement for a large group of consumers. The en banc Court should accept this case for review to bring clarity and uniformity to this important area of the law.

## II.  BACKGROUND

Plaintiffs in six consolidated cases, the first of which was filed nearly eight years ago, challenged what they alleged was the defendant credit bureaus' former practice of allowing pre-bankruptcy debts to remain on consumers' credit reports until the creditor reported that the account was included in a bankruptcy. While the litigation was pending, the bureaus agreed to implement automated procedures designed to identify and update debts likely to have been discharged in bankruptcy, without waiting for the creditor to advise of any new status of the debt. This settlement addresses damages claims based on the former alleged practice.

- 4 -

LA 51650057

Four years ago, the District Court issued a tentative ruling denying class certification. As a practical matter, that ruling would have ended consumers' ability to receive any monetary recovery at all, if the ruling were sustained. However, a mediation process supervised actively and aggressively by the District Court resulted in one of the largest Fair Credit Reporting Act settlements in history: $45 million. When the mediation concluded, Defendants believed that all plaintiffs and all their counsel supported the deal – indeed, all plaintiffs' counsel who had then appeared in the litigation stood before the District Court that evening, and none expressed any hesitation or reservation that years of litigation could be resolved on the negotiated terms. Defendants only learned later that not every plaintiff supported the settlement.

When the dissenting plaintiffs made themselves known, the District Court commenced a thorough process to allow their objections to be heard and considered. The District Court entered its order preliminarily approving the settlement in May 2009, but a careful and searching analysis followed over the course of the next two years. After comprehensive briefing and evidence, and multiple hearings, the District Court finally approved the settlement in July 2011. Fundamentally, the consumers' reaction to the settlement told the tale. Three-quarters of a million consumers filed claims, while only around a thousand objected or opted out: 750 "yes" votes for every "no." Moreover, even though

LA 51650057

comprehensive notice of the settlement was given to all 50 states' attorneys general and to the Federal Trade Commission pursuant to the federal Class Action Fairness Act, no governmental official presented any objection to the settlement whatsoever.

The Opinion disregards this broad endorsement of the settlement by the consumers who submitted claims. According to the Opinion, the language of the settlement agreement stating that settlement class counsel would only file incentive award applications on behalf of those named plaintiffs who supported the settlement so tainted the process as to render the public's massive support for the settlement completely irrelevant. Independently, the Opinion holds that the incentive awards granted – $3,000 to each of the four named plaintiffs who proffered the settlement for approval, or less than 0.03% of the total settlement fund – were so much larger than most individual claim amounts ($26) as to mandate automatic disapproval.[2] The Opinion declines even to address the overall fairness of the settlement.

---

[2] The settlement agreement provided for awards of $5,000, but the District Court reduced them.

### III. ARGUMENT

#### A. The Opinion's Failure To Consider The Overall Fairness Of The Settlement As Part Of Its Adequacy Analysis Under Rule 23(a)(4) Is Contrary To Law And Places This Circuit In Conflict With Other Circuits.

Rather than focus on whether the negotiation process delivered a result that was "fair, reasonable and adequate" to the proposed settlement class under Federal Rule of Civil Procedure 23(e)(2), the Opinion finds that improper incentives to the class representatives rendered them irredeemably inadequate under Rule 23(a)(4), regardless of how good the settlement is. Indeed, the Opinion says that the overall quality of the settlement need not be considered at all. This was error.

Citing this Court's prior decisions in <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948 (9th Cir. 2009), and <u>Staton v. Boeing Co.</u>, 327 F.3d 938 (9th Cir. 2003), the Opinion states that the "incentive awards here corrupt the settlement by undermining the adequacy of the class representatives and class counsel." (Op. at 18.) The Opinion further states:

> … the conditional incentive awards changed the motivations for the class representatives. Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness and a promise of no reward if they opposed the settlement. The conditional incentive awards removed a critical check on the fairness of the class-action settlement, which rests on the unbiased judgment of class representatives similarly situated to absent class members.

(Id. at 19-20.) Thus, without assessing whether the class representatives' purported conflict of interest actually resulted in settlement terms that were unfair to absent class members, the Opinion reversed the approval order on the grounds that "[t]he class representatives' divergent interests, as a result of the conditional incentive payments, undermined their ability to 'fairly and adequately protect the interests of the class.'" (Id. at 20 (quoting Fed. R. Civ. P. 23(a)(4).) The Opinion further held that the amount of the incentive awards was "disproportionately large" in relation to the awards to the class and thus "further exacerbated the conflict of interest caused by the conditional incentive awards." (Id. at 20.) Finally, the Opinion held that class counsel was also inadequate to represent the class due to the conflict allegedly created by the incentive awards. (Id. at 24-26.)

Yet the Fifth Circuit recognizes that the possibility that a class representative who proffers a settlement may not have perfect motives does not mandate automatic rejection of a good settlement: "the settlement itself provides insight into adequacy of representation." Ayers, 358 F.3d at 374. Indeed, "adequacy of representation and adequacy of settlement are different sides of the same question." Id. The settlement outcome here shows that class counsel prosecuted the claim "vigorously" on behalf of the proposed settlement class, just as this Court instructed in Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

LA 51650057

Likewise, because of the public policy favoring settlement, the Third Circuit will overlook an adequacy challenge predicated on the potential for intraclass conflict where a settlement's fairness outweighs the conflict asserted; vigorous pursuit of a claim that yields an excellent settlement result should excuse much. See Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 184 (3d Cir. 2012) (a "conflict must be 'fundamental' to violate Rule 23(a)(4)"). It is always easy for an objector to identify some hypothetical conflict; what is hard to prove, and which in this case was not proven, is that the conflict actually led to a worse result for the proposed settlement class. See Cobell, 679 F.3d at 920 (rejecting argument that hypothetical intra-class conflict is an adequate basis for vacating a class settlement agreement); Sullivan, 667 F.3d at 327-28 (en banc) (rejecting objection to settlement based on alleged intra-class conflict); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532-33 (3d Cir. 2004) (rejecting objectors' argument that alleged conflict between class members required reversal of the settlement under Rule 23(a)(4)).

To divorce analysis of adequacy from analysis of result, as the Opinion did here, makes no sense in light of how cases are actually litigated, how settlements are actually negotiated and how consumers actually voted here – by submitting claims, opting out or objecting. Where the result is good and popular, and where it emerged from a mediation process that was aggressively supervised by the District

LA 51650057

Court, an ivory-tower approach to potential conflict results in enormous disservice to the hundreds of thousands of consumers expecting to be paid cash on their settlement claims. Previously, this Court has required a showing of "material" conflict. Rodriguez, 563 F.3d at 959. The Opinion, however, improperly (and in conflict with the Third Circuit) reads the concept of materiality out of existence by declining to measure materiality against the settlement outcome. Compare Dewey, 681 F.3d at 184 (recognizing that a conflict is so "fundamental" as to merit disapproval of a settlement only when "it touches the specific issues in controversy").

In the settlement context, the plaintiff seeking approval on behalf of the proposed settlement class must "possess the same interest and suffer the same injury as the class members." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). The Opinion goes far beyond this simple test, and improperly imposes new requirements that will improperly restrict parties' ability to settle class cases that should be settled. This Court should grant en banc review so that this Court's precedents may be harmonized with those of other Circuits, and to provide definitive guidance to District Courts and parties engaged in class litigation throughout this Circuit.

- 10 -

### B. The Opinion's Failure To Conduct Any Meaningful Harmless-Error Analysis Conflicts With The Decision Of Another Panel Of This Court.

A related error was the Opinion's failure to analyze whether the settlement approval order could be upheld under the "harmless error" doctrine. As noted above, Defendants-Appellees expressly requested in their brief that the panel conduct a harmless-error analysis, and expressly cited Ludwig.

The Opinion's only discussion of this issue was:

> In Rodriguez I, after holding that the retainer agreements created a conflict of interest, we "conclude[d] that the presence of conflicted representatives was harmless" because two other class representatives had retainer agreements that did not contain the incentive-awards agreements that created the conflict. Rodriguez I, 563 F.3d at 961. Here, however, the conflict created by the conditional incentive awards in the settlement is not harmless. It affected all class representatives who supported the settlement. We conclude that the settlement must be reversed because the interests of class representatives who would get incentive awards diverged from the interests of the absent class members.

(Op. at 23-24.)

Another panel of this Court (sharing one member with the panel that issued the Opinion here) similarly declined to review the overall fairness of a class settlement after concluding that class counsel's fee award was miscalculated. See In re: HP Inkjet Printer Litig., No. 11-16097, at 4 (9th Cir. May 15, 2013). Ludwig, however, requires something more: "prejudice" that results from a "troubling" potential for conflict or improper decision. 681 F.3d at 1051 & 1053.

- 11 -

The Opinion here fails to address Ludwig at all, and identifies no specific prejudice to the proposed settlement class. Nothing in the record suggests that if the incentive award language in the agreement had been different, the outcome of the mediation that resulted in the $45 million settlement would have been different. To the contrary, that is a logical impossibility, since the agreement was not committed to writing until after the court-supervised mediation occurred. Because there was no prejudice to the proposed settlement class (as confirmed by the hundreds of thousands of consumers who submitted claims), the Ludwig standard requires affirmance of the District Court's judgment approving the settlement. Cf. Lane v. Facebook, 696 F.3d 811, 821 & n.3 (9th Cir. 2012) (rejecting conflict-of-interest challenge to cy pres component of settlement).

"Reversal on account of error is not automatic, but requires a determination of prejudice." Ludwig, 681 F.3d at 1053. "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" Id. (citation omitted). Among the factors an appellate court must consider are (1) "an estimation of the likelihood that the result would have been different," (2) "the impact of the error on the public perception of such proceedings," (3) "awareness of what body . . . has the authority to reach that result," and (4) "a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises

LA 51650057

may well make all the difference." Id. The Opinion addresses none of these factors. The en banc Court should.

### C. By Condemning All Incentive Awards, The Panel's Ruling Conflicts With This Circuit's Precedent.

Many courts recognize that settling class representatives may request incentive awards. See Stern v. Gambello, 480 F. App'x 867, 870 (9th Cir. 2012) (approving incentive awards); Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). The Opinion calls into question the continued validity of incentive awards in class settlement agreements generally, and should be reviewed en banc on that basis alone.

Although the Opinion's stated concern is that the incentive awards were "explicitly" conditioned on support of the settlement, incentive awards – regardless of whether they require support for the settlement – are never paid unless the settlement is approved. See Rodriguez, 563 F.3d at 958, 959 ("Incentive awards are fairly typical in class action cases" and are "generally sought after a settlement or verdict has been achieved."). Since there is always an implicit motivation for class representatives to support a settlement providing for incentive awards, the opinion threatens the validity of any incentive award included in any settlement agreement. If the motivation is what is harmful, it should not matter whether it is

- 13 -

implicit or explicit (or "subliminal," as noted in HP Inkjet, at 12 n.7) (quoting Staton, 327 F.3d at 964).  At least an explicit incentive is described in the settlement agreement and known to the District Court and the settlement class.

Rodriguez and Staton did not mandate the conclusions set forth in the Opinion, as those cases involved significantly different circumstances than those presented here.  In Rodriguez, the incentive agreements at issue were entered into as part of the initial retention of class counsel, but they were not disclosed to the district court until after preliminary approval of the settlement and they obligated class counsel to seek incentive awards for five of the named plaintiffs based on a sliding scale.  Rodriguez, 563 F.3d at 957-58.  The Rodriguez Court held that, by "tying their compensation – in advance – to a sliding scale based on the amount recovered, the incentive agreements disjoined the contingency financial interests of the contracting representatives from the class." Id. at 959 (emphasis supplied). Rodriguez was specifically directed at pre-agreed, sliding-scale incentive awards, a different circumstance from what is at issue here.

Staton is distinguishable because the size of the incentive awards was dramatically larger: an average of $30,000, with some as large as $50,000.  327 F.3d at 977.  The $3,000 awards approved here (reduced from $5,000) were modest by comparison, and had only an infinitesimal impact on the total class recovery.  Awards of this size fall well within the range recognized as reasonable.

- 14 -

See In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 463.  The Opinion's strong suggestion that a $3,000-$5,000 incentive award is inherently excessive contradicts both Mego and authorities from other Circuits.  See Moulton, 581 F.3d at 352 (approving $10,000 incentive award where class members received $300 payment); In re U.S. Bancorp Litig., 291 F.3d 1035, 1037-38 (8th Cir. 2002) (approving an award of $2,000 to each of five representative plaintiffs where the common fund consisted of $5 million to be split among a class of four million).  En banc review is necessary here as well to bring uniformity to the law.

## IV.  CONCLUSION

For the foregoing reasons, the petition for rehearing should be granted, and after rehearing by the en banc Court, the District Court's judgment should be affirmed.

Dated:  May 15, 2013              Respectfully submitted,

                                                        STROOCK & STROOCK & LAVAN LLP
                                                        JULIA B. STRICKLAND
                                                        STEPHEN J. NEWMAN
                                                        BRIAN C. FRONTINO

                                                        By:       s/ Stephen J. Newman
                                                                 Stephen J. Newman

                                                        Attorneys for Defendant-Appellee
                                                          TRANSUNION LLC

LA 51650057

## **CERTIFICATE OF COMPLIANCE**
(Circuit Rules 35-4 and 40-1)

I certify that pursuant to Circuit Rules 35-4 and 40-1, the attached petition for rehearing en banc is in compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

Dated:  May 15, 2013              Respectfully submitted,

                                  STROOCK & STROOCK & LAVAN LLP

                                  By:      s/ Stephen J. Newman
                                            Stephen J. Newman

                                  Attorneys for Defendant-Appellee
                                    TRANSUNION LLC

LA 51650057

| 9th Circuit Case Number(s) | 11-56376, 11-56387, 11-56389, 11-56397, 11-56400, 11-56440, 11-56482 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

***********************************************************************

### CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) _____ .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) _____

***********************************************************************

### CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) May 15, 2013 .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Naomi Sandres
P.O. Box 1896
Prairieville, LA 70769

Signature (use "s/" format) s/ Stephen J. Newman